**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Stewart McDOWELL,
Defendant-Appellant.**

**No. 86–1276.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 9, 1986.

Decided March 16, 1987.

Rehearing and Rehearing En Banc
Denied April 27, 1987.

William S. McDowell, Corunna, Mich., David K. Frank (argued), Schwenker, Cloud & Tudor, Columbus, Ohio, for defendant-appellant.

Robert W. Haviland, Asst. U.S. Atty., Flint, Mich., for plaintiff-appellee.

Before ENGEL and JONES, Circuit Judges, and EDWARDS, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Defendant William Stewart McDowell appeals from his jury conviction on one count of conspiracy to counterfeit in violation of 18 U.S.C. § 371 (1982), and one count of willful failure to appear (bond jumping) in violation of 18 U.S.C. §§ 3146(a) and 3150 (1982).[1] The evidence against McDowell presented at trial was overwhelming. He now challenges his conviction on various sixth amendment grounds. After reviewing the entire record, we find no constitutional violation and, therefore, affirm.

## I.

On June 24, 1983, McDowell and his wife, Revera Hendrix, were arrested by federal agents in a counterfeiting "sting." That same day, McDowell was visited at the police station by his retained counsel, Don Poniatowski. McDowell and Hendrix were arraigned before a federal magistrate on June 26, 1983. At that time, Poniatowski's law partner, John Nowak, entered an appearance on McDowell's behalf. McDowell and Hendrix were released on bond and promptly fled the country. On April 25, 1985, McDowell and Hendrix were arrested

---

1. McDowell's release on bond pursuant to § 3146(a) and his willful failure to appear in violation of § 3150 both occurred prior to the enactment of the Criminal Justice Act Revision of 1984. Section 203(a) of the 1984 Act repealed both statutes and added new, recodified sections to title 18 of the United States Code. *See* 18 U.S.C. §§ 3142 and 3146(a)(1) (Supp. III 1985). McDowell was tried and convicted pursuant to the pre–1984 statute.

by Canadian authorities in Alberta. They were returned to Michigan where they were indicted on the instant charges.

At his subsequent arraignment and detention hearing, McDowell was represented by another retained counsel, Michael Osaer. Nevertheless, over the magistrate's advice, McDowell made his own motion to dismiss the indictment. Two days later, on June 20, 1985, Nowak reappeared on McDowell's behalf. On July 1, Nowak withdrew and Emory Clark appeared as retained counsel for McDowell.

A pretrial motions hearing was held by the district judge on August 20, 1985. Mr. Clark was allowed to withdraw at that time because McDowell was no longer able to pay for his services. The district judge indicated that he would appoint counsel to represent McDowell—a Mr. Bremer. Despite Bremer's appointment, McDowell made repeated attempts to act as his own attorney at that hearing. It was also revealed at the August 20 hearing that McDowell had retained at least four other attorneys in the United States and Canada in an effort to recover money and property seized by the Canadian authorities.

On August 26, 1985, Bremer stated to the court that he could not be prepared for a September 3 trial date. McDowell refused to agree to an adjournment of the trial date and indicated that he was prepared to represent himself on that date: "I myself am ready [for trial] if I could have the rights granted to me...." Rather than have McDowell proceed *pro se*, the district judge allowed Bremer to withdraw and appointed yet another counsel— Charles Grossman. Grossman convinced McDowell that an adjournment of the trial date was in his best interests, and the trial was postponed until a future date not earlier than November 1, 1985.

The final pretrial hearing was held on October 23, 1985, at which time McDowell was still represented by Grossman. McDowell indicated that he was satisfied with Grossman's services up to that point. Nevertheless, Grossman stated to the court that his client had finally come to a decision as to whether he wanted to be represented by appointed counsel or to proceed *pro se*. After the court indicated its willingness to continue the appointment of Grossman as advisory counsel in the event that McDowell exercised his constitutional rights to self-representation, the following colloquy took place:

THE COURT: Okay. Have you made a decision as to what you wish to do in this case?

DEFENDANT McDOWELL: Represent myself with his [Grossman's] assistance, if you can do that?

THE COURT: All right, you understand that you will not be able to present something to me without going through him first? That's what I said to you a few moments ago, that if he's there as your counsel to consult, then you must consult with him before you present something to me. That's so that he can advise you as to its legality, it's the appropriate form and that it's the appropriate time and the appropriate method of presenting it to me. And also he can at that time advise you as its likelihood of success or failure. Do you understand that, Mr. McDowell?

DEFENDANT McDOWELL: Uh-huh, yes.

THE COURT: Any reason why I should not grant Mr. McDowell's request in this case in this fashion, Mr. Haviland [Asst. U.S. Att'y]?

MR. HAVILAND: No, your Honor.

THE COURT: All right, then you may represent yourself subject to Mr. Grossman remaining your advisory counsel and subject to the restriction that I have indicated, that you must consult with him before submitting anything to me.

App. 54–55. Throughout the trial, the district judge repeatedly had to remind McDowell of the condition that he check with Grossman before proceeding. The court also repeatedly indicated to McDowell, and to the other parties to the trial in McDowell's presence, that he thought McDowell was making a mistake and was "in over his head."

In preparation for trial, McDowell demanded, received and read the transcripts

of the grand jury testimony of witnesses against him. He used this information in his cross-examination of government witnesses (he conducted cross-examination of each and every witness). He also called witnesses in his defense and testified himself with Grossman conducting the examination.

## II.

All of McDowell's arguments to this court revolve around whether he knowingly and intelligently waived his sixth amendment right to counsel while asserting his alternative right to self-representation. In particular, he argues that the conviction should be reversed because the district court failed to make explicit warnings and determinations on the record relative to the waiver of counsel. He also contends that the district court erred in failing to inquire into and determine his competence to conduct his own defense. Finally, McDowell maintains that it was plain error not to declare a mistrial *sua sponte* when it became apparent that he was not representing himself effectively. We address these contentions *seriatim*.

## A.

■ The first issue presents the question whether the district court was required to conduct a lengthy and searching inquiry on the record to determine whether McDowell understood his right to be represented by counsel, the gravity of his decision to represent himself, and the obstacles that he would face. McDowell's counsel urges this court to reverse the instant conviction and create a prophylactic warning and inquiry to be conveyed to every criminal defendant wishing to assert his constitutional right to self-representation. Failure to make this warning and inquiry, or its functional equivalent, on the record and prior to the waiver of counsel, would necessarily be reversible error. While there can be no question but that this appeal would have been precluded or at least expedited had such a formal colloquy been held, we are reluctant to reverse an otherwise valid conviction under these circumstances.

The legal standard is well-settled that an accused's waiver of his right to counsel must be knowingly and intelligently made. *See Carnley v. Cochran*, 369 U.S. 506, 513, 82 S.Ct. 884, 888–89, 8 L.Ed.2d 70 (1962); *Von Moltke v. Gillies*, 332 U.S. 708, 727, 68 S.Ct. 316, 325, 92 L.Ed. 309 (1948); *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 241–42, 87 L.Ed. 268 (1942); *Johnson v. Zerbst*, 304 U.S. 458, 468–69, 58 S.Ct. 1019, 1024–25, 82 L.Ed. 1461 (1938). The Supreme Court stated in *Carnley:*

> Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not a waiver.

369 U.S. at 516, 82 S.Ct. at 890. Although the instant record does not speak very loudly on this issue, it cannot fairly be characterized as "silent." McDowell was clearly and repeatedly advised of his right to counsel, and his right to have counsel appointed if necessary, prior to his assertion of his right to self-representation.

Before 1975, constitutional determinations of the voluntariness of a waiver of counsel were motivated primarily by the need to protect accused persons from the dire consequences of rash gestures. In that year, however, the Supreme Court decided *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and accorded constitutional significance to the right to self-representation. There, the Court held that it was constitutional error to force a state-appointed public defender on an accused who wished to represent himself. Of course, the accused who is untrained in the law and represents himself still takes a grave risk, but the district judge who has to determine whether the waiver of the right to counsel is competently and intelligently made is now in a much more difficult position. An overprotective judge who refuses to allow a defendant to jeopardize his own defense may be reversed, *see id.*, and a judge who does not make a copious inquiry into the thought

process of the accused (which may themselves be characterized as trial strategy) is subject to an appeal such as that presently before this court.

In *Faretta*, the Court touched on the problem of the competing interests:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

422 U.S. at 835, 95 S.Ct. at 2541 (citations omitted). Since *Faretta*, a great many courts have addressed the question of the type of record necessary to establish that a defendant's waiver of counsel is knowing and intelligent. This circuit stated in *United States v. McCaskill*, 585 F.2d 189, 190 (6th Cir.1978) (per curiam):

> There was thus no occasion in *Faretta* to lay down detailed guidelines concerning what tests or lines of inquiry a trial judge is required to conduct in order to determine whether a defendant has "knowingly and intelligently" chosen to forego the benefits of counsel. While a more satisfactory record would be before us had the district judge chosen to follow a line of inquiry akin to that mandated by Rule 11(c), Rules of Criminal Procedure, an examination of the entire record in the present case satisfies us that appellant was in fact aware of the dangers, waived his right to be represented by counsel, and chose to represent himself "with eyes open." It is further apparent that he fully understood his right to appointed counsel and the court's willingness to make such an appointment.

The majority of the other circuits that have addressed this problem have adopted a similar nonformalistic approach to determining sufficiency of the waiver from the record as a whole rather than requiring a deliberate and searching inquiry. *See Richardson v. Lucas*, 741 F.2d 753, 756–57 (5th Cir.1984); *United States v. Hafen*, 726 F.2d 21, 25–26 (1st Cir.), *cert. denied*, 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984); *United States v. Kimmel*, 672 F.2d 720, 721–22 (9th Cir.1982); *United States v. Trapnell*, 638 F.2d 1016, 1029 (7th Cir. 1980); *United States v. Tompkins*, 623 F.2d 824, 828 (2d Cir.1980); *United States v. Pilla*, 550 F.2d 1085, 1093 (8th Cir.), *cert. denied*, 432 U.S. 907, 97 S.Ct. 2954, 53 L.Ed.2d 1080 (1977). Many of these courts have indicated that a formal inquiry on the record would have been preferable. The D.C. Circuit affirmed the conviction of a defendant who waived his right to counsel without the benefit of a formal inquiry by the district court, but exercised its *supervisory powers* to require all D.C. district courts to make such inquiries in future cases. *See United States v. Bailey*, 675 F.2d 1292, 1297 (D.C.Cir.), *cert. denied*, 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982). To our knowledge, the only circuit that has actually reversed a conviction because the lower court did not make such a searching inquiry on the record is the Third Circuit in *United States v. Welty*, 674 F.2d 185, 192 (3d Cir.1982). *Accord Piankhy v. Cuyler*, 703 F.2d 728, 730–31 (3d Cir.1983) (granting writ of habeas corpus).

■ We think it a fair reading of the record as a whole that McDowell understood the dangers and disadvantages of self-representation at the time he made his choice. It is clear that he was not a stranger to the courts, he knew he was entitled to counsel, and he was not faced with a situation of enduring representation by counsel he considered ineffective or being forced to proceed immediately on his own (as in many of the cases cited). We conclude from the record that McDowell elected to defend himself at trial with his "eyes open."

■ Nevertheless, in order to avoid future appeals of a similar nature, we follow the lead of the D.C. Circuit in *United*

*States v. Bailey,* 675 F.2d at 1297, and invoke our supervisory powers to identify the nature of the inquiry to be made and the procedure to be followed henceforth in situations where an accused seeks to waive representation by counsel and proceed *pro se.* A model inquiry for district judges is set forth in 1 *Bench Book for United States District Judges* 1.02–2 (3d ed. 1986). For convenience, it is reproduced in the appendix to this opinion. In the future, whenever a federal district judge in this circuit is faced with an accused who wishes to represent himself in criminal proceedings, the model inquiry or one covering the same substantive points along with an express finding that the accused has made a knowing and voluntary waiver of counsel, shall be made on the record prior to allowing the accused to represent himself.

### B.

McDowell next contends that, assuming *arguendo* that the waiver of the right to counsel was knowing and voluntary, the district court erred in failing to determine whether he was competent to conduct his own defense. He relies primarily on the case of *Pickens v. State,* 96 Wis.2d 549, 292 N.W.2d 601 (1980), in which the Supreme Court of Wisconsin held that in addition to the knowing and voluntary waiver, the trial court must also determine whether the accused "possesses the minimal competence necessary to conduct his own defense." *Id.,* 292 N.W.2d at 611. The *Pickens* court stated that in making this competency determination, the trial court should consider the accused's "education, literacy, fluency in English, and any physical or psychological disability which may significantly affect his ability to communicate a possible defense to the jury." *Id.*

■ We recognize that the degree of competency required to waive counsel is "vaguely higher" than the competency required to stand trial. *United States ex rel.*

*Konigsberg v. Vincent,* 526 F.2d 131, 133 (2d Cir.1975), *cert. denied,* 426 U.S. 937, 96 S.Ct. 2652, 49 L.Ed.2d 388 (1976) (citing *Westbrook v. Arizona,* 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966) (per curiam)). We do not accept the reasoning of the Wisconsin Supreme Court, however, that the question of competency is determined separately from the question whether the assertion of the right of self-representation was knowing and intelligent. It is clear that no degree of legal knowledge is required to knowingly and intelligently demand the right to represent oneself in a criminal proceeding. *Faretta,* 422 U.S. at 836, 95 S.Ct. at 2541–42. To suggest that an accused, who knows and appreciates what he is relinquishing and yet intelligently chooses to forego counsel and represent himself, must still have had some formal education or possess the ability to converse in English is, we think, to misunderstand the thrust of *Faretta* and the constitutional *right* it recognized. The *Faretta* Court assumed that the overwhelming majority of laymen who defend themselves in a criminal action will fare worse than those represented by skilled counsel. Nonetheless, just as it is the accused's right to plead guilty or *nolo contendere* to the charges against him, it is equally an accused's personal constitutional right to face the charges alone, either by standing mute and forcing the state to its proofs or by attempting to defend himself. The *only* condition on this right is that it be asserted by the accused with his "eyes open."

■ We are not called upon today to decide the hard case. Mr. McDowell had a high school education, was literate, was fully fluent in the English language, and had no apparent physical or psychological disabilities.[2] None of his many attorneys ever suggested that he was, in any sense, incompetent. To the extent that McDowell himself made comments during the course

---

**2.** We note only in passing that a psychological impairment would go to the question of whether the waiver of counsel was knowing and intelligent. Any limitations due to physical or educational impairments that do not affect the ability of the accused to choose self-representation over counsel can probably be overcome, if necessary, through the use of stand-by counsel or interpreters. Such aids may be provided even over the objection of the accused. *See Faretta,* 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46.

of trial suggesting that he may not have been "in his right mind," we understand these statements to be little more than tactical and colloquial pleas for sympathy.

## C.

McDowell's final argument is that the district court committed plain error in not declaring a mistrial *sua sponte* after it became apparent that he was not receiving a "fair trial." The only thing that was "unfair" about McDowell's trial was that he did not represent himself very well and he refused to make use of the stand-by counsel appointed by the court. However, as the Supreme Court stated in *Faretta*, "whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Id.* at 834 n. 46, 95 S.Ct. at 2541 n. 46. We think this logic applies equally to preclude the instant "fair trial" claim. The district court accorded McDowell his full constitutional rights at trial.

## III.

In conclusion, after reviewing the record as a whole, we find that McDowell knowingly and intelligently chose to waive his right to counsel and to assert his corollary right to self-representation with his "eyes open." Accordingly, the judgment of conviction is AFFIRMED.

## APPENDIX

Guideline For District Judges from 1 *Bench Book for United States District Judges* 1.02–2 to –5 (3d ed. 1986).

When a defendant states that he wishes to represent himself, you should ... ask questions similar to the following:

(a) Have you ever studied law?

(b) Have you ever represented yourself or any other defendant in a criminal action?

(c) You realize, do you not, that you are charged with these crimes: (Here state the crimes with which the defendant is charged.)

(d) You realize, do you not, that if you are found guilty of the crime charged in Count I the court must impose an assessment of at least $50 ($25 if a misdemeanor) and could sentence you to as much as _____ years in prison and fine you as much as $_____? (Then ask him a similar question with respect to each other crime with which he may be charged in the indictment or information.)

(e) You realize, do you not, that if you are found guilty of more than one of those crimes this court can order that the sentences be served consecutively, that is, one after another?

(f) You realize, do you not, that if you represent yourself, you are on your own? I cannot tell you how you should try your case or even advise you as to how to try your case.

(g) Are you familiar with the Federal Rules of Evidence?

(h) You realize, do you not, that the Federal Rules of Evidence govern what evidence may or may not be introduced at trial and, in representing yourself, you must abide by those rules?

(i) Are you familiar with the Federal Rules of Criminal Procedure?

(j) You realize, do you not, that those rules govern the way in which a criminal action is tried in federal court?

(k) You realize, do you not, that if you decide to take the witness stand, you must present your testimony by asking questions of yourself? You cannot just take the stand and tell your story. You must proceed question by question through your testimony.

(*l*) (Then say to the defendant something to this effect):

I must advise you that in my opinion you would be far better defended by a trained lawyer than you can be by yourself. I think it is unwise of you to try to represent yourself. You are not familiar with the law. You are not familiar with court procedure. You are not familiar with the rules of evidence. I would strongly urge you not to try to represent yourself.

(m) Now, in light of the penalty that you might suffer if you are found guilty and in light of all of the difficulties of representing yourself, is it still your desire to represent yourself and to give up your right to be represented by a lawyer?

(n) Is your decision entirely voluntary on your part?

(o) If the answers to the two preceding questions are in the affirmative, [and in your opinion the waiver of counsel *is* knowing and voluntary,] you should then say something to the following effect:

"I find that the defendant has knowingly and voluntarily waived his right to counsel. I will therefore permit him to represent himself."

(p) You should consider the appointment of standby counsel to assist the defendant and to replace him if the court should determine during trial that the defendant can no longer be permitted to represent himself.

ENGEL, Circuit Judge, concurring.

I write separately not to express any disagreement whatever in Judge Jones' fine opinion, but to reinforce it.

It had seemed to me, from a careful review of the record, that this was a case in which defendant McDowell sought not the protection of the constitutional guarantees to the right to counsel and to the right to represent one's self, but instead to manipulate a system designed for his own protection in order to gain advantage from a totally unwarranted and unjust abuse of it. The question before our panel, therefore, was not whether McDowell had in any way, constitutional or otherwise, been dealt with unfairly. He had not. Instead the question was how we might more effectively forestall future recurrences of what has become a rather commonly recurring abuse. I had, and still have, an inborn reluctance to chiseling in marble the very sensible advice which is provided for federal district judges in the *Bench Book for United States District Court Judges,* Third Edition (1986), as reproduced in the Appendix to Judge Jones' opinion. Nor-mally, the *Bench Book* should provide the tools for effective judges and not rules to be obeyed on penalty of reversal. Thus, I would normally oppose the kind of rule-making engaged in here except for its consummate good sense and usefulness as a tool for avoiding the least useful and productive of all grounds for appellate review: procedural error which can easily be avoided. It is important also to emphasize that the rule today, based upon our supervisory powers, requires substantial compliance and not literal adherence to the guidelines in the *Bench Book.* For example and by way of illustration, it would probably be useful for a judge to inquire as to the extent of any defendant's education and training, and particularly whether he has observed other criminal trials either as a defendant or as a witness. The point is, of course, that the more searching the inquiry at this stage the more likely it is that any decision on the part of the defendant is going to be truly voluntary and equally important that he will not be able to raise that issue later if he does then decide to represent himself. It is simply a question of taking enough time at the moment to make a meaningful record and thus to avoid the very real dangers of reversal should the defendant not prove himself up to the task of his own self-defense.

In my opinion, Judge Jones has provided, by a very workable standard, a means of protecting the vital constitutional rights involved while avoiding the unjustified manipulation which can otherwise throw a real but unnecessary burden on the criminal justice system. In addition, by exercising the supervisory powers of the court, Judge Jones has made it clear, I believe, that we are not endeavoring to express any constitutional guidelines which might arguably have applicability beyond our own federal system.