**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Olga HERRERA–MARTINEZ,**
**Defendant–Appellant.**

No. 92–5269.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 16, 1992.

Decided Feb. 9, 1993.

---

James E. Arehart, Lawrence R. Carmichael, Asst. U.S. Attys., Lexington, KY, Jacquelyn A. Jess, Asst. U.S. Atty. (argued and briefed), Covington, KY, for plaintiff-appellee.

Robert L. Abell (argued and briefed), Lexington, KY, for defendant-appellant.

Before: KEITH and JONES, Circuit Judges; and JOINER, Senior District Judge.*

KEITH, Circuit Judge.

Appellant, Olga Herrera–Martinez, appeals her jury conviction and sentence. She was charged in a two count indictment for assault with a dangerous weapon with intent to do bodily harm at a federal correctional institution, in violation of 18 U.S.C. § 113(c), and assault upon an employee at a federal correctional institution, in violation of 18 U.S.C. § 111(a)(1). For the reasons stated below, we VACATE the judgment of the district court and REMAND for the court to conduct proceedings consistent with this opinion.

I.

On July 19, 1991, the Appellant pleaded not guilty to both counts of the indictment. On October 15, 1991, prior to the commencement of her trial, Andrew Stevens, Appellant's appointed counsel, informed the court that Appellant wanted to proceed *pro se* and had been unwilling to assist in the preparation of her defense. (Tr. I at 2). Stevens also informed the court that he believed Appellant had a defense to the charges against her. (Tr. I at 3).

Appellant informed the court of her desire to represent herself at trial. The court then began to question and advise her regarding the trial process. (Tr. I at 3). During this colloquy, Appellant made numerous bizarre and obscene statements.

> You want—to the Court, what do you want to do through to me? Six month, whatever you want to play, true, a month, whatever, I don't want to talk shit.... I don't feel like hearing any shit.... No shit. If you want to give me 20 years, give me 40 years, do whatever the fuck you want.... I believe that everyone in the world has the right to represent themselves when they're not guilty, and they don't need anyone. And I don't need anyone.... All my life, ever since I was little. I'm the mother of all the jungles.

(Tr. I at 5–6). After the foregoing colloquy, Stevens moved for the court to order Appellant to undergo a competency evaluation pursuant to 18 U.S.C. § 4241. (Tr. I at 9). The court did not rule on Stevens' motion, but further questioned Appellant, who continued to respond to the court in a bizarre and obscene manner.[1] The court ultimately decided to allow Appellant to proceed *pro se*, instructing Stevens to serve as standby counsel. (Tr. I at 9).

---

* The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

1. When asked by the court whether she had ever studied law, Appellant responded, "I never studied it, but I've passed through it." (Tr. I at 10). When asked whether she was familiar with the Federal Rules of Criminal Procedure, Appellant responded, "Well, I've never killed anybody, but if I catch you, I'm going to break your ass." (Tr. I at 10).

Stevens then renewed for the second time his request that Appellant be given a competency evaluation. (Tr. I at 11). The court then ruled "that Ms. Herrera–Martinez is fully capable and competent of proceeding here today." (Tr. I at 12).

When the court attempted to explain to Appellant that she would be tried by a jury, she responded with more obscenities.[2] At the request of the government, the court heard testimony regarding Appellant's competency from Claudia Santee, a psychiatric nurse employed in the mental health unit at the Federal Correctional Institution in Lexington, Kentucky. (Tr. I at 17).

Santee testified that she knew Appellant because she had previously been under observation at the mental health unit. (Tr. I at 17–18). Santee testified that she had overheard a psychologist at the mental health unit (Dr. Alice Conroy) state to another physician that Appellant did not suffer from a mental disease or defect. (Tr. I at 19–20). Santee opined that Appellant was not suffering from a mental disease or defect. (Tr. I at 21). Appellant cross-examined Santee and continued to make obscene and bizarre remarks.[3] (Tr. I at 26). The court then remarked that "maybe I ought to have you sent out for a competency evaluation," but proceeded to further explain to Appellant the mechanics of proceeding with a trial. (Tr. I at 26). The court finally stated, "I see no reason at this time to believe that Ms. Herrera–Martinez is not competent to stand trial." (Tr. I at 28).

During the course of the trial, Appellant made a number of outbursts and eventual-

ly had to be forcibly removed from the courtroom.[4] In a contempt order, the court stated that Appellant "shouted and laughed loudly in court," "directed vile and obscene language towards the Court," and "consistently refused to communicate with the Court."[5] (App. at 29). After Appellant was removed from the courtroom, Stevens represented her throughout the remainder of the trial.

Subsequent to Appellant's removal from the courtroom, Dr. Conroy testified that she had evaluated Appellant on four separate occasions and each time found that she had no specific disease or defect and was competent to proceed in prison disciplinary proceedings. (Tr. II at 72). Dr. Conroy also testified that Appellant had stated to her that she knew how to feign craziness. (Tr. II at 74).

Prior to Appellant's sentencing, the court committed her for a thirty day psychiatric evaluation to determine her mental competency to "understand the nature and consequences of the proceedings against her or to assist in her own defense." (App. at 31). On February 6, 1992, a competency hearing was held. At this hearing, Dr. Conroy testified that although Appellant had an "antisocial personality disorder," she was capable of understanding the nature and consequences of her trial. (Tr. III at 11–12). Dr. Conroy added, however, that Appellant "may very well choose not to understand those proceedings because she has no particular interest in them." (Tr. III at 12). Dr. Conroy also testified that Appellant had a habit of conversing with a ghost while in her isolation cell. (Tr. III at 18).

---

**2.** Appellant directed the following statements to the court:
> I don't understand this mother fucking place.... Well, I'm not going to fight like this because I'm shitting on all your mothers. This isn't play or anything. This is stupidity. I've never gone to school or anyplace. I'm tired of—it is a pain in the ass to talk about this.

(Tr. I at 14–15).

**3.** When asked whether she understood that she was going to be tried by a jury, Appellant responded: "We've been here for 40 hours eating shit. I said that between the two of us." (Tr. at 26).

**4.** When the court warned Appellant that she would be shackled and placed back in her holding cell if she continued to interrupt, she stated: "If you want to make a decision such as that, that's of little importance to me. When a person is lying, you have to yell. And I have enough good manners to ask for permission to do so." (Tr. II at 23).

**5.** We commend the court for its patience and tolerance in dealing with Appellant's belligerent and offensive behavior.

At the conclusion of Dr. Conroy's testimony, the court ruled that Appellant was mentally competent. (App. at 36). Appellant was then sentenced to concurrent terms of 60 months on the assault with a dangerous weapon charge and 36 months on the charge of assaulting a federal employee. This timely appeal followed, limited to the issue of whether the district court erred in allowing Appellant to represent herself at trial.

## II.

No specific objection was made at trial regarding the court's decision to allow Appellant to proceed *pro se*. Therefore, we must review the district court's actions under the plain error standard. *United States v. Meyers*, 952 F.2d 914, 917 (6th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 1695, 118 L.Ed.2d 407 (1992). The Supreme Court has defined "plain error" for purposes of Fed.R.Crim.P. 52(b) as error that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985).

*United States v. McDowell*, 814 F.2d 245 (6th Cir.), *cert. denied*, 484 U.S. 980, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987), is a leading case in this Circuit regarding waiver of the right to counsel. In *McDowell*, we stated that "[t]he legal standard is well-settled that an accused's waiver of his right to counsel must be knowingly and intelligently made." *Id.* at 248. *McDowell* sets forth the standard inquiry for district courts to follow in deciding whether the waiver of the right to counsel is knowing and intelligent.

In the future, whenever a federal district judge in this circuit is faced with an accused who wishes to represent himself in criminal proceedings, the model inquiry or one covering the same substantive points along with an express finding that the accused has made a knowing and voluntary waiver of counsel, shall be made on the record prior to allowing the accused to represent himself.

*Id.* at 250; *see also United States v. Miller*, 910 F.2d 1321, 1324–25 (6th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). The model inquiry adopted by the court is from 1 *Bench Book for United States District Judges* 1.02–2 to –5 (3d ed. 1986), and is reproduced in the appendix of that opinion. *See McDowell*, 814 F.2d at 251–52.

In the instant case, the court advised Appellant of the charges against her,[6] asked her whether she had ever studied law, and whether she was familiar with the Federal Rules of Criminal Procedure and the Federal Rules of Evidence. The court also advised Appellant not to proceed *pro se* and required her appointed counsel to serve as standby counsel. (Tr. I at 10). However, the court failed to make an express finding that Appellant knowingly and voluntarily waived her right to counsel.[7] The following discussion took place between the court and Appellant regarding her request to proceed *pro se:*

> THE COURT: Now, I believe, Ms. Herrera–Martinez, that you would be better served to be represented by counsel here today and to listen to your counsel and seek the advice of your counsel.
>
> COMMENT BY MS. HERRERA–MARTINEZ THROUGH THE INTERPRETER: Go clean your ass.
>
> THE COURT: However, if you wish to proceed without counsel, I will allow you do to so. Now, do you wish to proceed without counsel?

---

**6.** The following discussion took place between the court and the Appellant:

> THE COURT: Do you understand that under this indictment you are charged with intent—
> COMMENT BY MS. HERRERA–MARTINEZ THROUGH THE INTERPRETER: Because I threw a chair on the head of a dead person. (Tr. I at 7).

**7.** According to the guidelines for district judges contained in 1 *Bench Book for United States District Judges* 1.02–2 (3d ed. 1986), whenever a judge concludes that the waiver of counsel is knowing and voluntary, the judges should state something to the following effect: "I find that the defendant has knowingly and voluntarily waived his right to counsel. I will therefore permit him to represent himself." *See McDowell*, 814 F.2d at 252.

COMMENT BY MS. HERRERA–MARTINEZ THROUGH THE INTERPRETER: Now.

THE COURT: All right, Mr. Stevens, I am going to ask you to act as standby counsel here and should Ms. Herrera–Martinez want to discuss anything with you, then you would be available to do so.

(Tr. I at 10). In addition to the court's failure to make an express finding that Appellant knowingly and voluntarily waived her right to counsel, the court also failed to state its specific findings of fact and conclusions of law regarding Appellant's statements and behavior at trial. Therefore, we are unable to determine from the record whether Appellant knowingly and intelligently waived her right to counsel.

We think our decision in *McDowell* is instructive on what factors the court should have addressed on the record in making its determination of whether Appellant knowingly and intelligently waived her right to counsel. In *McDowell*, we held that the defendant knowingly and intelligently waived his right to counsel and explained our decision as follows:

> We are not called upon today to decide the hard case. Mr. McDowell had a high school education, was literate, was fully fluent in the English language, and had no apparent physical or psychological disabilities. None of his attorneys ever suggested that he was, in any sense, incompetent. To the extent that McDowell himself made comments during the course of trial suggesting that he may not have been "in his right mind," we understand these statements to be little more than tactical and colloquial pleas for sympathy. (footnote omitted).

*Id.* at 250–51. As for the court's determination in the instant case that Appellant was competent to stand trial, we stated in *McDowell* that "the degree of competency required to waive the right to counsel is 'vaguely higher' than the competency required to stand for trial." *Id.* at 250. Therefore, the fact that the district court found that Appellant was competent to stand trial is not conclusive as to whether she was competent to waive her right to counsel.

The record reflects that Appellant was not fluent in English and that even with the assistance of a translator the court had difficulty understanding her. In fact, Appellant stated at trial that she never attended school. (Tr. I at 14–15). The record is also replete with numerous bizarre and obscene comments made by Appellant throughout pre-trial proceedings and at trial, which prompted her appointed counsel to make several motions for the court to order a competency evaluation of Appellant. Appellant's behavior in court was so disruptive and belligerent at times that she was ultimately held in contempt and had to be forcibly removed from the courtroom. These facts strongly suggest that Appellant was not competent to waive her right to counsel.

We noted in *McDowell* that a "psychological impairment would go to the question of whether the waiver of counsel was knowing and intelligent." 814 F.2d at 250 n. 2. With respect to the testimony of Nurse Santee and Dr. Conroy, it is unclear whether this testimony establishes that Appellant has no psychological impairment that affects her competency to waive her right to counsel. *See Id.* Although both Nurse Santee and Dr. Conroy stated that they believed Appellant was not suffering from a mental disease or defect and was competent to stand trial, the court never specifically addressed or ruled on whether this testimony supported a finding that Appellant was competent to waive her right to counsel. The court erred in not making specific findings of fact and conclusions of law regarding its reliance on Nurse Santee's and Dr. Conroy's testimony.

The record reflects that the district court failed to make a proper determination of whether Appellant was competent to waive her right to counsel and whether she in fact knowingly and intelligently made such a waiver. The district court's failure to make such a determination was plain error. Accordingly, we vacate the judgment of the district court and remand for the court to

conduct a hearing on whether Appellant knowingly and intelligently waived her right to counsel. If the court finds that Appellant competently waived her right to counsel, her conviction and sentence should be reinstated. However, if the court finds that Appellant was not capable of waiving her right to counsel, her conviction and sentence should not be reinstated. We instruct the court to state on the record specific findings of fact and conclusions of law in support of its ruling.

### III.

For the foregoing reasons, we VACATE the judgment of the district court and REMAND for the court to conduct proceedings consistent with this opinion.