IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 26, 2014 Session

## STATE OF TENNESSEE v. CHARLES T. FLETCHER, JR.

**Appeal from the Criminal Court for Johnson County**
**No. 5904     Honorable Robert E. Cupp, Judge**

_____

**No. E2013-01131-CCA-R3-CD - Filed August 11, 2014**

_____

The Defendant-Appellant, Charles T. Fletcher, Jr., was charged with the offense of aggravated assault, a Class C felony. See T.C.A. § 39-13-102(a)(1)(A)(iii). While in Johnson County General Sessions Court, the Defendant-Appellant executed a waiver of his right to counsel, a waiver of his right to a preliminary hearing, and a waiver of his right to be tried only upon presentment or indictment of a grand jury. In Johnson County Criminal Court, he repeatedly informed the trial court that he had waived his right to counsel, that he had represented himself in a criminal case before, and that he wished to represent himself in this case. On the day of trial, the Defendant-Appellant signed a waiver of his right to be tried only upon presentment or indictment of a grand jury. The same day, the prosecutor and the Defendant-Appellant signed an information charging the Defendant-Appellant with aggravated assault. A Johnson County Criminal Court jury subsequently convicted the Defendant-Appellant as charged, and the trial court imposed a three-year probationary sentence. In this appeal, the Defendant-Appellant argues: (1) he failed to knowingly and voluntarily waive his right to counsel because (a) he was not informed of his charges, potential penalties, and rights and (b) because the trial court never inquired as to his competency to represent himself; (2) he failed to knowingly and voluntarily waive his right to be tried only upon presentment or indictment of a grand jury because he was unable to read the waiver, to have the assistance of counsel, or to have the court explain his right to presentment and indictment; (3) the trial court erred in failing to continue the case or to appoint counsel or advisory counsel when it became obvious that he could not properly represent himself; (4) the trial court erred in denying his motion to set aside the jury verdict; and (5) the cumulative errors caused by the absence of counsel and his inability to represent himself were so prejudicial as to deny his right to a fair trial and due process. Upon review, we reverse the judgment of the trial court, vacate the Defendant-Appellant's conviction, and remand the matter to the trial court for proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed, Vacated, and Remanded**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which and ROGER A. PAGE, J., and JEFFREY S. BIVINS, SP. J., joined.

Frank L. Slaughter, Jr., Bristol, Tennessee, for the Defendant-Appellant, Charles T. Fletcher, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Anthony W. Clark, District Attorney General; and Matthew Roark, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

This case stems from an altercation between the Defendant-Appellant and his seventy-eight-year-old uncle, the victim, on May 26, 2011. The Defendant-Appellant was apparently upset because the victim was ogling his wife's "hind end." Consequently, the Defendant-Appellant approached the victim, slung him to the ground, and threatened to cut him with a knife. The police were called to the scene, and the Defendant-Appellant was arrested based on the victim's account of the event. The facts supporting the conviction, however, are not particularly relevant to the issues raised in this appeal; thus, our primary focus will be on the procedural posture of the case prior to trial, which we observe to be highly unusual.

The technical record begins with a general sessions judgment form document,[1] dated July 6, 2011, which was executed by the Defendant-Appellant in general sessions court. The July 6 form included the following language, which was signed and dated by the Defendant-Appellant:

> The Court has advised me that I have the right to be represented by an attorney and if indigent to have an attorney appointed to represent me. I WAIVE MY RIGHT TO AN ATTORNEY AND WISH TO PROCEED IN THIS CASE WITHOUT AN ATTORNEY.

---

[1] It is clear that this form was intended to apply to proceedings involving defendants charged with misdemeanors seeking to handle their case in general sessions court. See Tenn. R. Crim. P. 5(c)(2)(A)-(C). Because the Defendant-Appellant was charged with a Class C felony, see Tenn. R. Crim. P. 5 (d)(1)-(3), the general sessions court's involvement in the case was limited either to conducting a preliminary hearing to determine probable cause and submitting the matter to the action of the grand jury or to dismissing the matter for lack of probable cause. It had no authority to eliminate the requirement for presentment or indictment by a grand jury.

A different portion of the general sessions form also stated the following: "I waive my right to a preliminary hearing ~~and agree for my case to be bound over to the Johnson County Grand Jury~~." It appears that the general sessions judge struck through the aforementioned language to reflect the Defendant-Appellant's desire that his case not be presented to the grand jury. The next part of the form provided the following:

> "I waive my right to be tried only after being indicted by the Grand Jury and {do not} **waive my right to a trial by jury and plead NOT GUILTY** to violation(s) of TCA 40-7-103 and 39-13-102."

In this part of the form, the general sessions judge again amended the form, using the grammatical symbol ^ and adding the words "do not" above the language waiving the right to a trial by jury. The Defendant-Appellant signed both portions of the form amended by the judge. In addition, the bottom of the form stated the following: "Charles T. Fletcher . . . ( ) appealed ( ) Defendant ~~bound over to Johnson County Grand Jury after~~ ( ) preliminary hearing (X) waiving preliminary hearing and ( ) bail set at $_____ (X) Defendant shall continue on current bond of $7500.00." Once again, it appears that the general sessions judge struck through this language to reflect the Defendant-Appellant's desire that his case not be presented to the grand jury. The judge also initialed this portion of the form.

Forty-five days later, on August 19, 2011, the Defendant-Appellant appeared before the Johnson County Criminal Court for the purpose of arraignment.[2] There was no indictment, presentment, or information shown or read to the Defendant-Appellant, and he did not enter a plea. The trial court advised the Defendant-Appellant that his case was an "add-on." The State agreed and said that the Defendant-Appellant was charged by private warrant with domestic violence aggravated assault. The prosecutor was unaware of the Defendant-Appellant's case and said he needed time to determine whether to dismiss it or file a motion to amend the charge to aggravated assault. The trial court asked the Defendant-Appellant if he was going to hire a lawyer, and he replied, "I want to represent myself." Then the following exchange occurred:

---

[2] An arraignment, which is fundamental to the initiation of criminal prosecution, informs an accused of the charges instituted by the grand jury, provides him with a copy of the charges, and "call[s] him to plead." Tenn. R. Crim. P. 10; State v. Sutton, 761 S.W.2d 763, 769 (Tenn. 1988). The record does not contain a charging instrument providing the criminal court with jurisdiction at the time of the August 19, 2011 hearing, and we question what, if any, authority the trial court had over the Defendant-Appellant at this point in the process.

| | |
|---|---|
| The Court: | Do you think you are capable of doing that? |
| Defendant-Appellant: | I've had–I've done this before. |
| The Court: | Do you know the Rules of Evidence in this state? |
| Defendant-Appellant: | There's a time limit on this, right? |
| The Court: | A what? |
| Defendant-Appellant: | A time limit on this trial. The state has so many days to prepare their case. |
| The Court: | Not necessarily. |

The Defendant-Appellant asserted that he had represented himself in a previous case where he was arrested and searched without a warrant. In this previous case, he received a preliminary hearing and three days later told the court clerk that he wanted to waive his "Grand Jury proceedings." An hour later, the clerk told him that he had a court date scheduled for sixty days later, and the trial court ultimately dismissed his case, he claimed, "on grounds of double jeopardy." When the trial court in this case informed the Defendant-Appellant that the aggravated assault charge was a new case, he said, "Well, I'm saying I want my rights." The court assured the Defendant-Appellant that he would be given his rights but asserted that it was "not going to let you wear me out in front of a jury when you don't know how the rules are played." The Defendant-Appellant responded that he knew "how to cross-examine witnesses, Your Honor." The court stated that if he knew "the rules" and "all the different things we need to do," then it was going to set the case for trial. The Defendant-Appellant replied, "Give me a trial date, Your Honor."

After the prosecutor moved to continue the case, the court announced that it would be reset to September 22, 2011. The Defendant-Appellant interjected and said, "So, I cannot have a trial date, Your Honor?" The trial court responded that it would give him a trial date on September 22, 2011, if it was necessary. The Defendant-Appellant persisted in asking for a trial date, and the following conversation occurred:

| | |
|---|---|
| The Court: | Sir, I just told you that you did have the right [to a trial date]. I'm not going to tell you again, [the prosecutor] has the right to look at this case. He knows absolutely nothing about it. He has the right to look at it to see if there's any substance to |

it, sir, that's what his responsibility i[s]. Do you understand that? And if you–this is not prosecution by the sheriff[']s department of this county[,] this was a private prosecution apparently. He knows nothing about it. I give him that opportunity, sir. That's the way we do this stuff. If he makes a determination then it should proceed forth then on September the 22nd, I'll set you a trial date. Do you understand me, now?

(NO AUDIBLE RESPONSE)

The Court:            Sir, I just asked you do you understand . . .

Defendant-Appellant:    Yes, Your Honor.

The Court:            You're fooling with the wrong person–fooling with the wrong person. You be back here on September the 22nd, sir.

Defendant-Appellant:    Yes, Your Honor.

On September 22, 2011, the second hearing, the prosecutor stated that it was ready to set the case for trial if that was what the Defendant-Appellant desired. This exchange followed:

The Court:            Do you want to represent yourself in this case?

Defendant-Appellant:    Yes, sir.

The Court:            You understand you're going to have to play by the rules?

Defendant-Appellant:    Yes, sir.

The Court:            I won't treat you any different than I treat lawyers in this court and you'll–you'll do it that way.

The trial court, after checking its calendar, realized its current docket was full and told the Defendant-Appellant to return to court on December 2, 2011. Although the case was continued to December 2, 2011, the record does not contain a transcript for the December 2, 2011 hearing or any other hearing that may have occurred prior to trial.

On January 24, 2012, the day of the Defendant-Appellant's trial, the prosecutor, acting as district attorney general pro tem, signed the information charging the Defendant-Appellant with aggravated assault. The information was then filed with the trial court. When the Defendant-Appellant asked to present a statement prior to selecting a jury in this case, the trial court informed him that there was nothing to present at the time and stated, "[Y]ou're going to play by . . . these rules, so, you be quiet when I talk." The court then had the following conversation with the Defendant-Appellant:

| The Court: | [W]hen you waived this matter up here and they–and not only did you waive it, but you also waived your right to be tried by indictment or presentment. I was not aware of that and my druthers was that they should have done [an indictment or presentment], but you had waived it so . . . they didn't do that. So, we're going to try you this morning on what's called an information. It's the only way it can be tried. There's three ways that you can go in front of a jury and that's by indictment, presentment, or an information. They're all identical . . . . Since you waived your right to an indictment the only way we can proceed now is by information and that's the way we're going to proceed on this matter. I'm going to let you take it and read it. |
|---|---|
| Defendant-Appellant: | I ain't got my glasses, Your Honor, I can't read it. |
| The Court: | Well, how are you going to try this case today? |
| Defendant-Appellant: | Your Honor, I've watched the–the . . . |
| The Court: | [Defendant-Appellant], I have a jury out there [that] I'm getting ready to bring in very quickly. We start this court at 9 o'clock and that's about five minutes away. |

Defendant-Appellant: Well, Your–Your Honor, due process means that they need a warrant to arrest me and they need a warrant to search me.

The Court: They didn't need anything. They didn't need anything[.] You're here, you're already here and those things are things that are gone. You can't–that–that's not an issue for me at this point. This overcomes any arrest warrant, or anything else they had on you. I don't know–you should have presented that to me a long time ago. It's–It's–a trial is going to go this morning and we're not going to go into that . . . we're going to try this case today, okay?

Defendant-Appellant: So, when–so, when the deputies come and I asked for a lawyer that don't mean nothing?

The Court: I have offered you a lawyer in this courtroom and you've refused it. Do you want me to play it back for you? I offered you a lawyer in this courtroom[.]

Defendant-Appellant: I was talking about before we came to this court.

The Court: Well, that's not any of my concern about what–where–before we came into this court. And sheriff deputies don't give you lawyers, sir, judges give you[] lawyers, and you've waived your right to counsel all the way up through here.

Defendant-Appellant: The statement that I made to them officers was gave under duress 'cause I asked for an attorney and I wished to remain silent. Well, this is what they done, they slapped their hand on their pistol and walked down in my garden and said, well, we don't need a warrant and you ain't running me off and we ain't going to leave till we get what we come for.

| | |
|---|---|
| The Court: | Sir, you should have raised that a long time ago it's too late this morning. See, I tried to tell you that, but you said, no, you didn't need a lawyer. |
| Defendant-Appellant: | I've got . . . |
| The Court: | No. . . |
| Defendant-Appellant: | . . . I've got. . . |
| The Court: | . . . I'm talking. You told me no, I didn't need a lawyer, so, we're going to try this case this morning do you understand that? |
| Defendant-Appellant: | Yes, Your Honor. |

The court then read the information to the Defendant-Appellant and asked him to sign it to show that it had been read to him. When he stated that he had already signed that form in general sessions court, the court stated that he was now in criminal court and that the case was going to be tried on the facts that occurred at the time of the incident. At that point, the Defendant-Appellant apparently signed a "Waiver of Right to be Tried upon Presentment or Indictment of Grand Jury" that was filed that day. The waiver contained the following language:

> The Defendant, Charles T. Fletcher, Jr., having been advised by the Court and proceeding pro se, of his constitutional right to be tried only upon presentment or indictment of the Grand Jury of his/her peers;

> The Defendant, Charles T. Fletcher, Jr., hereby waives such right and submits his case to the Court on the Information filed by the District Attorney General's Office.

The court informed the Defendant-Appellant that the parties were going to select a jury and asked him if he knew anything about peremptory challenges. The Defendant-Appellant replied, "Your Honor, if the DA doesn't have all of his ducks in a row . . . ." The court responded:

> [Y]ou should have gotten a lawyer. You–you chose not to do that. I offered you one and you chose not to do that. You told me, no, that you could take care of this, so, you're going to take care of it. We're going to try this case

today, and I don't want to hear anymore of that, do you hear me?–Do you hear me sir?

After the Defendant-Appellant entered his plea of not guilty to the charge and the jury was sworn, the parties gave opening statements. As we previously stated, because there is no challenge to the sufficiency of the evidence, it is unnecessary for us to provide a factual recitation of the trial testimony. Following the evidence presented at trial, the jury convicted the Defendant-Appellant as charged.

On April 30, 2012, the Defendant-Appellant appeared before the court with counsel. Defense counsel asked for some guidance from the court as to how to proceed in the Defendant-Appellant's case, and the court replied, "[The Defendant-Appellant is] just one of those people, [defense counsel], that knows everything . . . and can do everything." Defense counsel noted that the general sessions judge wrote through all the waiver provisions, and the court said, "I remember it was . . . weird." Then defense counsel asserted that the general sessions judge allowed the Defendant-Appellant to waive an indictment, even though the general sessions court was without jurisdiction to do so. Defense counsel stated that at the criminal court level, the district attorney's office filed an information charging the Defendant-Appellant. At that point, the trial court recalled that it noticed there was no indictment or presentment in the file, and he informed the prosecutor that the only way that he could proceed with the case was through an information.

Defense counsel argued that there was "never any intelligent waiver by the defendant of the right to a presentment or [indictment by the] Grand Jury[.]" The court acknowledged, "That . . . may be true because [the Defendant-Appellant], unfortunately, is one of those people you can't talk to." The court added, "I think I begged and [pleaded] with him to get a lawyer" but the Defendant-Appellant told me that he did not need a lawyer and that he could try the case. Defense counsel said there were "some extraordinary limitations on this man," and he did not want to wait until the Defendant-Appellant was sentenced before filing a motion for new trial. Defense counsel said he was not sure whether the court wanted to deal with these issues that day, and the court responded that it was not ready to decide anything at that point. The court suggested that defense counsel talk to the district attorney general to "see what you all can figure out to do on it." The court admitted that "[i]t was a mess" and that it "was flabbergasted when [it] didn't see an indictment in the file, or a presentment or something." Defense counsel stated that things got worse when the prosecutor had to read the information to the Defendant-Appellant because the Defendant-Appellant did not bring his glasses to trial. The court replied, "[T]hat's his mind, going to trial and didn't even bring his glasses with him . . . [a]nd he can't read without them."

A year later, on April 30, 2013, defense counsel requested that the court grant a sentence of probation to the Defendant-Appellant, which had been agreed to by the State. The trial court told the Defendant-Appellant that he "better hug" defense counsel because "[h]ad it not been for him I would have jailed you." The court added that if the Defendant-Appellant failed to abide by the rules of probation, he would take care of the case. The trial court agreed to sentence the Defendant-Appellant to the minimum sentence of three years to be served on probation. Defense counsel noted that the Defendant-Appellant had been very well behaved during this hearing, and the trial court replied:

> I'll have to agree with you. Since he came–if he'd just come to you to begin with we wouldn't have had all this hassle. Anytime somebody comes in here and thinks they can represent themselves this is what you get into and that's what we got into in this case. He thought he knew more than he did.

The court also reduced the Defendant-Appellant's fine from the $2500.00 recommended by the jury to $50.00, and allowed the Defendant-Appellant to report to his probation officer every other month rather than monthly.

## ANALYSIS

The Defendant-Appellant argues that he did not knowingly and voluntarily waive his right to an attorney. He asserts that the trial court, in determining whether he was knowingly and voluntarily waiving his right to counsel, should have inquired about "his age, education, legal training, work history, knowledge of the seriousness of the charges, or of the dangers of proceeding at all stages of the criminal case without having counsel" before determining whether he was competent to represent himself. He also argues that his written waiver of his right to counsel did not satisfy Tennessee law because it did not include language from the waiver form provided by the Tennessee Administrative Office of the Courts. In addition, he contends that the trial court failed to follow all the requirements in Tennessee Rule of Criminal Procedure 44(b) and failed to follow the guidelines in 1 Bench Book for United States District Judges, as recommended in State v. Herrod, 754 S.W.2d 627, 630 (Tenn. Crim. App. 1988), before allowing him to waive his right to counsel. He claims that because he did not knowingly and voluntarily waive his right to counsel, the trial court should not have accepted his waiver of that right, and this court should vacate his judgment of conviction.

The State responds that the Defendant-Appellant has waived this issue because the record "does not contain a transcript of the hearing on July 6, 2011, where he executed this waiver or of a hearing that took place on December 2, 2011, a few weeks prior to trial." Moreover, the State asserts that the record does not include a transcript of the hearing on the

motion for new trial, which would have contained evidence regarding the Defendant-Appellant's claims. For reasons that we will outline below, we conclude that the trial court erred in finding that the Defendant-Appellant intelligently and knowingly waived his right to counsel.

The Sixth Amendment of the United States Constitution and Article I, Section 9 of the Tennessee Constitution guarantee an accused in a criminal prosecution the right to assistance of counsel or the right to represent oneself without the assistance of counsel. See U.S. Const. amend. VI; Tenn. Const. art. I, § 9; Faretta v. California, 422 U.S. 806, 819 (1975); State v. Northington, 667 S.W.2d 57, 60 (Tenn. 1984). To exercise the right of self-representation, a defendant must (1) timely assert the right to proceed pro se; (2) clearly and unequivocally assert the right; and (3) knowingly and intelligently waive the right to assistance of counsel. State v. Hester, 324 S.W.3d 1, 30-31 (Tenn. 2010); State v. Herrod, 754 S.W.2d 627, 629-30 (Tenn. Crim. App. 1988). In the case sub judice, the only issue concerning the Defendant-Appellant's right of self-representation is whether he intelligently and knowingly waived his right to counsel.

When a trial court is faced with a defendant seeking to proceed pro se, it must question the defendant extensively regarding his ability to represent himself. The United States Supreme Court, in light of the strong presumption against waiver of the constitutional right to counsel, has held that a trial court must observe the following guidelines before determining that a defendant has waived the right to counsel:

> [A] judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

Von Moltke v. Gillies, 332 U.S. 708, 723-24 (1948); State v. Northington, 667 S.W.2d 57, 60 (Tenn. 1984). It is not necessary for a defendant to have "technical legal knowledge" in order to exercise his right of self-representation. Faretta, 422 U.S. at 836; Herrod, 754 S.W.2d at 630. Moreover, the litany of questions in 1 Bench Book for the United States District Judges § 1.02-2 to -5 (3d ed. 1986), which are delineated in the appendix to United

States v. McDowell, 814 F.2d 245, 251-52 (6th Cir. 1987), have been previously cited by this court as an aid in determining a valid waiver of the right to counsel. Herrod, 754 S.W.2d at 630.

Rule 44 of the Tennessee Rules of Criminal Procedure and Tennessee Code Annotated section 8-14-206 effectively codified the process a trial court shall employ when determining whether a defendant has waived the right to counsel. For indigent defendants, Rule 44 provides, in pertinent part, as follows:

> **(a) Right to Assigned Counsel.** Every indigent defendant is entitled to have assigned counsel in all matters necessary to the defense and at every stage of the proceedings, unless the defendant waives counsel.
>
> **(b) Waiver.**
>
> (1) Actions by Court. Before accepting a waiver of counsel, the court shall:
>
> (A) advise the accused in open court of the right to the aid of counsel at every stage of the proceedings; and
>
> (B) determine whether there has been a competent and intelligent waiver of such right by inquiring into the background, experience, and conduct of the accused, and other appropriate matters.
>
> (2) Written Waiver. A waiver of counsel shall be in writing.
>
> (3) Record of Waiver. An accepted waiver of counsel shall be in the record.

In all other circumstances, Tennessee Code Annotated section 8-14-206 provides as follows:

> (a) No person in this state shall be allowed to enter a plea in any criminal prosecution or other proceeding involving a possible deprivation of liberty when not represented by counsel, unless such person has in writing waived the right to the assistance of counsel.
>
> (b) Before a court shall accept a written waiver of the right to counsel, the court shall first advise the person in open court concerning the right to the aid of counsel in every stage of the proceedings. The court shall at the same time determine whether or not there has been a competent and intelligent waiver of

such right, by inquiring into the background, experience and conduct of the person and such other matters as the court may deem appropriate. If a waiver is accepted, the court shall approve and authenticate it and file it with the papers of the cause, and if the court is one of record, the waiver shall also be entered upon its official minutes.

As evidenced by the above rules, "[p]resuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which shows, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." Carnley v. Cochran, 369 U.S. 506, 516, 82 S. Ct. 884, 890 (1962).

Here, the trial court was in the unenviable position of determining a valid waiver of the right to counsel by a defendant who consciously and emphatically wanted to represent himself. A valid exercise of a defendant's right to represent himself necessarily hinges on the trial court's determination of a valid waiver of his right to counsel. Indeed, the above authority was designed to prevent the catch twenty-two–now faced by this court–in which a defendant demands their right of self-representation and later claims they were denied their right to counsel. Unfortunately, in this case the trial court failed to comply with the applicable standards. While the Defendant-Appellant's previous experience with a court case certainly bears on his ability to represent himself, the record does not contain sufficient proof to support a valid waiver by the Defendant-Appellant of his right to counsel. See U.S. v. Keen, 104 F.3d 1111, 1115-16 (9th Cir. 1997) (concluding that waiver of right to counsel was invalid despite defendant's background and experience in legal matters because court did not fully inform defendant of disadvantages of proceeding pro se); Berry v. Lockhart, 873 F.2d 1168, 1171 (8th Cir. 1989) (concluding that waiver of right to counsel was invalid despite the fact that defendant had some college education, had prior experience with criminal justice system, and did "reasonable job" handling own case because court failed to advise him of perils of proceeding pro se).

More importantly, there is no written waiver of the right to counsel in the record. Although the State contends that the July 6, 2011 standard form evincing the Defendant-Appellant's waiver of his right to counsel in general sessions court is sufficient, we disagree. Northington, 667 S.W.2d at 61 (quoting Von Moltke 332 U.S. at 724) (stating that "[a] mere routine inquiry–the asking of several standard questions followed by the signing of a standard written waiver of counsel–may leave a judge entirely unaware of the facts essential to an informed decision that an accused has executed a valid waiver of his right to counsel"). We further reject the implication that a waiver of the right to counsel at the general sessions court level satisfies the obligations of the criminal court pursuant to Rule 44. Under this interpretation, the rule would be rendered obsolete. General sessions courts are not courts

of record and have only limited jurisdiction over felony offenses. Moreover, a valid waiver of the right to counsel in a felony case cannot occur at the general sessions level primarily because the defendant has yet to be formally charged. Furthermore, we note that the Defendant-Appellant was not charged by information until the day of his trial.[3] This means each time the trial court touched upon whether the Defendant-Appellant was capable of representing himself prior to trial, the trial court and the Defendant-Appellant were unaware of the precise charge against him. Immediately after the trial court read the information to the Defendant-Appellant, the trial commenced. The Defendant-Appellant did not have an opportunity to file any motions, to review the elements of the offense, to determine any lesser included offenses, or to learn the range of punishment he was facing. Based on these facts, he represented himself at trial without knowing all the facts essential to a broad understanding of the whole matter. See Von Moltke, 332 U.S. at 724. Because the trial court did not conduct a penetrating and comprehensive examination of all the circumstances under which he asserted his right of self-representation, see id., we conclude that the Defendant-Appellant did not intelligently and knowingly waive his right to counsel.

---

[3] A defendant is statutorily entitled to "fourteen (14) full days, Sundays and legal holidays excluded, after arrest and the return of the indictment or presentment before being tried for the offense." T.C.A. § 40-14-105. Although the Defendant-Appellant in this case was prosecuted upon an information, we believe he was also entitled to the fourteen-day time period in Code section 40-14-105 before being tried. Moreover, we note that the denial of this statutory time to prepare for trial reaches constitutional dimensions when a defendant is denied adequate assistance of counsel because of the denial. Malone v. State, 707 S.W.2d 541, 543 (Tenn. Crim. App. 1985); Tommy Griffin v. State, No. 296, 1989 WL 60519, at *1 (Tenn. Crim. App., at Knoxville, June 7, 1989). Here, the trial court allowed the Defendant-Appellant to assert his right to self-representation even though he had not intelligently and knowingly waived his right to counsel and tried him on the same day he was given notice of the information, which resulted in prejudice to the Defendant-Appellant. See State v. Brown, 795 S.W.2d 689, 693 (Tenn. Crim. App. 1990).

Finally, the appellate record, while limited,[4] shows that the Defendant-Appellant did not knowingly and intelligently waive his right to be tried only upon presentment or indictment of a grand jury. In short, the Defendant-Appellant's waiver of his right to be tried only upon presentment or indictment of a grand jury was not proper because the Defendant-Appellant was not represented by counsel during the information, and there was no valid waiver of the right to counsel. The trial court also failed to explain on the record that the Defendant-Appellant had a right to be indicted by the grand jury. Therefore, we reverse the judgment of the trial court, vacate the Defendant-Appellant's conviction, and remand the case to the trial court for dismissal of the information. If charges are refiled on remand, and if the Defendant-Appellant asserts his right of self-representation, then the trial court will be required to comply with the requirements in Rule 44 and Code section 8-14-206 before determining whether the Defendant-Appellant has knowingly and intelligently waived the right to counsel. In making this determination, the trial court may find it helpful to ask the Defendant-Appellant the litany of questions recommended in Herrod and recited in McDowell, 814 F.2d at 251-52.

## CONCLUSION

Because we have determined that the Defendant-Appellant did not knowingly and intelligently waive his right to counsel and did not knowingly and intelligently waive his right to be tried only upon presentment or indictment of a grand jury, we reverse the

---

[4] After the State argued in its brief that the Defendant-Appellant had waived his issues for failing to provide an adequate record on appeal, appellate counsel for the Defendant-Appellant filed a motion to supplement the record with transcripts of "hearings germane to this Appeal." This court denied the motion on the ground that the defense failed to identify the specific transcripts necessary to provide a complete account of what occurred in the trial court relative to the issues raised on appeal. The Defendant-Appellant's attorney then filed a motion to supplement the record with the transcript from the motion for new trial hearing "as undersigned counsel has requested same and has yet to receive [it]." On February 13, 2014, this court granted the second motion, giving the clerk twenty days from entry of this order to prepare the transcript from the motion for new trial hearing. In an effort to comply with the February 13, 2014 order, the clerk forwarded a letter stating the following: "To update the court, the Court Reporter and I have listen[ed] to the recording, and there was no hearing[–]the defendant was just sentenced. There is however an entry in the computer system that denied the Motion for New Trial." Attached to the clerk's letter was a document entitled "Rule Docket Report" that listed numerous court dates related to the Defendant-Appellant's case. We do not know whether a hearing was conducted on each of these dates. However, at oral arguments, the Defendant-Appellant's attorney stated that he had requested all the transcripts relevant to this case and was told by the clerk's office that he had already been given the transcripts in existence in this case.

-15-

judgment of the trial court, vacate the Defendant-Appellant's conviction, and remand the matter to the trial court for proceedings consistent with this opinion.

_____
CAMILLE R. McMULLEN, JUDGE