IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 3, 2026

## STATE OF TENNESSEE v. CHRISTOPHER MICHAEL FIEDLER

**Appeal from the Circuit Court for Henry County**
**No. 17112    Bruce Irwin Griffey, Judge**

_____

**No. W2025-00621-CCA-R3-CD**

_____

The Defendant, Christopher Michael Fiedler, appeals his Henry County Circuit Court conviction of driving on a suspended license, for which he received a sentence of 180 days' incarceration.  On appeal, the Defendant argues that he is entitled to a new trial because the trial court erred by finding that he knowingly and voluntarily waived his right to the assistance of counsel.  He also argues that he is entitled to a new sentencing hearing because the trial court failed to consider the purposes and principles of sentencing or to make the requisite findings pursuant to *State v. Hooper*, 29 S.W.3d 1, 13 (Tenn. 2000), in support of its determination that confinement was particularly suited to provide an effective deterrence to others likely to commit similar offenses.  The State responds that the Defendant knowingly and voluntarily waived his right to counsel and that the trial court did not abuse its discretion in imposing a within range sentence.  Following our review, we reverse the Defendant's conviction and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Reversed; Case Remanded**

STEVEN W. SWORD, J., delivered the opinion of the court, in which KYLE A. HIXSON and MATTHEW J. WILSON, JJ., joined.

Brennan M. Wingerter, Assistant Public Defender – Appellate Division (on appeal); Erica Paschall, Paris, Tennessee (as elbow counsel at trial); and Christopher Michael Fiedler, Paris, Tennessee, Pro Se (at trial).

Jonathan Skrmetti, Attorney General and Reporter; Elizabeth Helen Evan, Assistant Attorney General; Neil Thompson, District Attorney General; and Morgan Crocker and Andy Clark, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I.    FACTUAL AND PROCEDURAL HISTORY

On November 4, 2024, a Henry County grand jury returned a one-count indictment charging the Defendant with driving on a suspended license, a Class B misdemeanor. Tenn. Code Ann. § 55-50-504(a)(1).  On December 13, 2024, the trial court appointed the District Public Defender's Office (first counsel) to represent the Defendant.

On January 14, 2025, first counsel filed a motion to withdraw from the Defendant's case, alleging that she and the Defendant had a "fundamental disagreement" which prohibited the attorney-client relationship from continuing.  The trial court denied first counsel's motion to withdraw on January 30, 2025, following a hearing.  On February 5, 2025, first counsel filed a second motion to withdraw.  In this motion, first counsel noted that the trial court had denied her first motion to withdraw because the Defendant had stated his desire for first counsel to remain as his attorney.  First counsel reiterated that she and the Defendant had a "fundamental disagreement" and stated her belief that the Defendant would not be satisfied with her representation.  On February 10, 2025, the trial court granted first counsel's motion to withdraw and appointed substitute counsel (trial counsel). On April 4, 2025, the Defendant, through trial counsel, filed a signed waiver of his right to a jury trial.  The Defendant's case proceeded to a bench trial on April 8, 2025.

At the outset of the Defendant's bench trial, the trial court noted that it had recently met in chambers with trial counsel and the prosecutors.  During this meeting, trial counsel informed the trial court that the Defendant "indicated" he was dissatisfied with trial counsel's representation and would prefer to proceed pro se.  The Defendant stated he would prefer that he and trial counsel "work together," with trial counsel serving as co-counsel.  The Defendant averred that he believed trial counsel would not allow him to ask questions he considered relevant, even if she served as co-counsel.

The trial court, while noting that it was unsure what the Defendant's arguments and defenses would be, then discussed this court's opinion in *State v. Murphy*, No. W2023-01332-CCA-R3-CD, 2024 WL 4579304 (Tenn. Crim. App. Oct. 25, 2024), *no perm. app. filed*.  The trial court summarized the facts of that case and this court's holding, likened it to the Defendant's case, and stated,

> [I]f that's your claim, that you never applied for a driver's license, therefore you can't be, uh, charged with driving on a revoked driver's license or privilege, this case is going – I'm going to follow the law.  And the [Court of Criminal] Appeals says this is the law, so this is the law I'm going to follow.

- 2 -

So, if that is your defense, you might want to consult with your attorney and talk with the State about, perhaps, resolving it differently.

The trial court stated that it would permit the Defendant to discuss how he intended to proceed with trial counsel, noting that "if you represent yourself, I'm going to allow [trial counsel] to stay there as co-counsel, and she can advise you what she, legally, thinks you ought to do."

Following a brief recess, the Defendant informed the trial court that he wished trial counsel to "stay on as co-counsel." The trial court stated that trial counsel would not "technically" serve as co-counsel and that "it's either she's your attorney and you're the client, or you're going to be representing yourself" with trial counsel serving as elbow counsel. The trial court further explained that if the Defendant wished to proceed with trial counsel serving as elbow counsel, then trial counsel would "provid[e] legal advice" which the Defendant was free to accept or reject while the Defendant represented himself.

The Defendant responded that he would prefer trial counsel to serve as elbow counsel. However, he then asked, "Elbow counsel is, kind of, a co-counsel, right?" The trial court reiterated that trial counsel would serve only to advise the Defendant as he represented himself and that the Defendant was free to accept or reject her advice. The Defendant responded, "Okay."

The trial court then questioned the Defendant regarding his decision "to make sure this decision you're making is being done freely, knowingly, and voluntarily." The trial court asked the Defendant his age; his highest education level; his employment history; whether he could read and write; whether he was an attorney or possessed a law degree; whether he had previously taken any special education courses; whether he had previously been treated for any mental health issues; and whether he understood the nature of his charge and its associated penalties. The Defendant testified that he was forty-nine years old; that he did not complete high school; that he had previously worked for twenty years as a licensed carpenter and had completed certain "union courses" in that profession; that he could read and write; that he had not previously taken any special education courses; that he had never been treated for any mental health issues; and that he understood he was charged with a Class B misdemeanor and faced a maximum sentence of six months' incarceration and a fine of $500.

The trial court then discussed "an increase in the number of . . . sovereign citizen claims." The trial court asked the Defendant whether he had "read something, or if someone's indicated to you in some written materials, or ha[s] spoken with you and advised you what they believe, legally, the law is concerning your ability to . . . operate a motor vehicle without applying for a driver's license or a privilege." The Defendant initially

denied that he had previously discussed his defense with anyone and stated that his argument did not relate to "being a sovereign citizen." He averred that his defense would discuss "the actual privilege and the actual right" and would distinguish between the "leisure side" and the "actual business-side of this privilege." The trial court stated that the statute does not distinguish "between private leisure and public commercial" and is, instead, primarily concerned with public safety. The trial court again asked the Defendant whether he had consulted with anyone about his defense. The Defendant conceded that he had "talked to a few people" and "listened to a few people," including an individual from East Tennessee, but averred that he had "mostly" researched his defense on his own. The trial court stated that this individual may be engaged in the unauthorized practice of law and referred the matter to the District Attorney General's Office "for review and investigation."

The trial court then asked the Defendant if he was sure he wanted to represent himself, and the Defendant stated he was. The trial court again asked the Defendant if he understood he could receive a sentence of six months' incarceration if convicted, and the Defendant stated he understood. At this point, trial counsel interjected and stated that she had advised the Defendant regarding the advantages and disadvantages of representing himself and that the Defendant had decided "to move forward with the decision he stated to the [c]ourt."

Following this colloquy, the trial court stated,

[Trial counsel], I'll ask you to stay on as, uh, elbow counsel.[1] You're – you're legally relieved from any obligations concerning representation. I – as a favor to the [c]ourt, I'd simply ask you that if [the Defendant] has any questions about the law, how to do something, you can advise him what your understanding of the law is. And he can take your advice or not take your advice; there's no consequences to you. [The Defendant] is on his own in these proceedings.

The trial court then heard opening statements.

Following opening statements, the State called Paris Police Department Lieutenant Michael Ramos to testify. Lieutenant Ramos testified that at approximately 1:59 p.m. on July 3, 2024, he drove along Maurice Fields Drive and saw the Defendant driving away from a nearby park on a motor scooter. Lieutenant Ramos believed, based upon his "prior knowledge," that the Defendant's driver's license had been previously suspended, and called dispatch to confirm this suspicion. After confirming that the Defendant's driver's

---

[1] For consistency, we will hereafter refer to trial counsel as "elbow counsel."

license was still suspended, Lieutenant Ramos drove his police vehicle behind the Defendant and activated his emergency lights while on Volunteer Drive. He stated that the Defendant pulled his vehicle over on the nearby Emerald Cove. Lieutenant Ramos testified that each of these roads was publicly maintained.

Lieutenant Ramos stated that he informed the Defendant that his driver's license was still suspended. The Defendant responded that he "knew that" and averred that he was "traveling" and "not driving." After speaking with the District Attorney General's Office, Lieutenant Ramos issued the Defendant a citation and had the Defendant's motor scooter towed. He testified that the Defendant's motor scooter was not registered. A copy of the Defendant's official driver's record from the State of Tennessee's Department of Safety, which stated that the Defendant's driver's license was suspended on August 12, 2023, was entered as an exhibit over the Defendant's objection.

On cross-examination, Lieutenant Ramos recalled that the Defendant's motor scooter had a seat compartment. He averred that he "probably" opened the seat compartment during his investigation and that the Defendant removed items from the compartment during the stop. He was unsure what specific items the Defendant removed from the compartment. He stated that he did not see anyone besides the Defendant on the motor scooter. He reiterated that he knew that the Defendant's driver's license was suspended when he initiated the stop. He stated that he did not observe any safety hazards posed by the Defendant when he initiated the stop, aside from the Defendant's driving on a suspended license. He also stated that the Defendant's motor scooter was never registered as a motor vehicle and that he knew from "prior dealings" with the Defendant that his motor scooter was "over 49ccs" and required a driver's license to operate.

The State rested, and the Defendant presented no additional proof. Upon this evidence, the trial court found the Defendant guilty as charged without hearing closing arguments.[2]

During sentencing, the State requested that the trial court impose the maximum within-range sentence of 180 days' incarceration and affix a $500 fine, arguing that "other less restrictive ways to address this situation have not worked" and citing the need to "protect the public at large." The Defendant elected not to present arguments during sentencing.

---

[2] Both the State and the defendant in a criminal prosecution have the right to present closing arguments. Tenn. R. Crim. P. 29.1. However, neither side objected during the trial, nor is that issue before us in this appeal.

The trial court again cited this court's opinion in *Murphy*, which it described as "squarely address[ing] the issue in this case" and as indicating that the Defendant "just lose[s] legally." The trial court again addressed the State's compelling interest in protecting public safety by requiring a driver's license in order to operate motor vehicles on public roads. The trial court also noted that it was "extremely concerned that someone is giving [the Defendant] legal advice contrary to state law."

The trial court asked the State whether the Defendant had been previously charged with similar offenses. The State agreed that this was not the "first time he's been pulled over for this," but noted that this was the Defendant's first conviction of driving on a suspended license. The trial court found that the Defendant had "been through the court process before and advised what the law requires him to do." The State agreed that the Defendant had been informed by officers and "district attorneys" as to "what the law requires him to do regarding operating that motor vehicle . . . on the public streets of Paris." The Defendant responded that he had previously been charged with similar offenses six times since 2021 and that each offense was dismissed. He denied that he had been told that the law required him to get a driver's license in order to drive his motor scooter on public roads during those proceedings. He also denied that he had gotten a driver's license during the pendency of his case.

The trial court made the following findings in imposing the Defendant's sentence:

> [Defendant], we've spent all morning here. Uh, the [c]ourt, uh, provided both the State and your defense attorney at the time, [elbow counsel], with clear case law regarding the issue you're trying to raise and argue concerning the legality of whatever of you operating this motor vehicle on the streets of, uh, Paris, Henry County, Tennessee, without having a license obtained by the Tennessee Department of Safety. It's illegal to do that. The Legislature certainly has the authority to do that.

> Um, this sentence is not just for you in this case, although part of it is, but a part of this sentence is to, um, let everyone else know in the community that this behavior will not be tolerated. Uh, you have – these district attorneys and the law enforcement that are here today, we've got major methamphetamine problems in this district, other issues, the time they're expending on this case takes away from those cases. Now, you're certainly entitled to every legal argument you want to in defense. But, quite frankly, you don't really have a defense based upon the case law that was sent. Uh, you've really, pretty much, just wasted everybody's time here, uh, with a – in the [c]ourt's opinion – nonsensical defense. There's just no basis for it. It makes no sense.

- 6 -

There's no Supreme Court case law or anything out there, or non-citizen, or traveler's privilege, notice, administrative – anything like that. That's all just nonsense, [the Defendant]. I don't know who you're listening to, but they're idiots if you're listening to somebody else. They don't know the law; they probably don't have a law degree. Anyone with a law degree would never advise you of that. Uh, your attorney, I believe, essentially, tried to advise you of that, and advise you in this case; you chose to ignore her.

Based upon all your decisions and what's important is that the disposition in this case sends a clear message to everyone else, the [c]ourt's going to sentence you to the maximum one hundred-and-eighty days in the county jail.

This timely appeal followed.

## II.    ANALYSIS

On appeal, the Defendant argues that he is entitled to a new trial because the trial court denied him the assistance of counsel without a knowing and voluntary waiver of said right. He also argues that he is entitled to a new sentencing hearing because the trial court failed to consider the purposes and principles of sentencing or to make the requisite findings pursuant to *State v. Hooper*, 29 S.W.3d at 13, in support of its determination that confinement was particularly suited to provide an effective deterrence to others likely to commit similar offenses. The State responds that the Defendant knowingly and voluntarily waived his right to counsel and that the trial court did not abuse its discretion in imposing a within-range sentence. We agree with the Defendant.

### A.  WAIVER OF THE RIGHT TO COUNSEL

The Defendant first argues that the trial court erred by denying him the right to assistance of counsel and that he did not knowingly and voluntarily waive the right. Specifically, the Defendant argues that he did not sign a written waiver pursuant to Tennessee Rule of Criminal Procedure 44; that his statements indicated he did not understand the ramifications of such a waiver or of proceeding pro se; and that the trial court's inquiry was insufficient to ensure he was knowingly and voluntarily waiving his right to counsel. The State responds that the absence of a written waiver is not dispositive and that the trial court's inquiry was sufficient and "followed all the requisite procedures."

Both the Constitution of the United States and the Constitution of Tennessee guarantee criminal defendants the right to counsel in prosecutions. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."); Tenn. Const art. 1, § 9 ("That in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel[.]"); *Gideon v. Wainwright*, 372 U.S. 335, 342 (1963) (incorporating the Sixth Amendment right to counsel to the states via the Fourteenth Amendment); *see also State v. Willis*, 196 S.W.3d 653, 702-03 (Tenn. 2016) ("Tennessee courts have consistently interpreted the right to counsel under article I, section 9 of the Tennessee Constitution as identical to the Sixth Amendment right to counsel."). These concomitant rights also guarantee a criminal defendant's right to self-representation. *Faretta v. California*, 422 U.S. 806, 821-22 (1975); *State v. Northington*, 667 S.W.2d 57, 60 (Tenn. 1984). A criminal defendant's right to the assistance of counsel and to self-representation are alternative rights; that is, "a criminal defendant cannot logically waive or assert both rights" because "waiver of one right constitutes a correlative assertion of the other." *State v. Burkhart*, 541 S.W.2d 365, 368 (Tenn. 1976). In other words, a criminal defendant must waive his or her right to the assistance of counsel in order to assert the right to self-representation. *State v. Hester*, 324 S.W.3d 1, 30 (Tenn. 2010). There is no constitutional right to "hybrid" representation in which a criminal defendant participates with counsel in his or her defense, although a trial court may, under certain exceptional circumstances, permit such representation. *State v. Berry*, 141 S.W.3d 549, 574 (Tenn. 2004).

A criminal defendant wishing to waive his or her right to the assistance of counsel must do so in writing, and such writing must be included in the record. Tenn. R. Crim. P. 44(b)(2), (3); *Hester*, 324 S.W.3d at 31. In order to assert the right to self-representation, a defendant must (1) timely request to proceed pro se, (2) clearly and unequivocally assert the right to self-representation, and (3) knowingly and intelligently waive the right to the assistance of counsel. *State v. McCary*, 119 S.W.3d 226, 256 (Tenn. Crim. App. 2003) (citing *State v. Herrod*, 754 S.W.2d 627, 629-30 (Tenn. Crim. App. 1988)). In determining whether a defendant has validly waived the right to the assistance of counsel, a trial court must "advise the accused in open court of the right to the aid of counsel at every stage of the proceedings" and "determine whether there has been a competent and intelligent waiver of such right by inquiring into the background, experience, and conduct of the accused, and other appropriate matters." Tenn. R. Crim. P. 44(b)(1). The trial court must also ensure the defendant is apprised of "the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948).

Questions of a defendant's valid invocation of the rights to self-representation or to the assistance of counsel present mixed issues of law and fact. *State v. Jones*, 568 S.W.3d

101, 124 (Tenn. 2019). Under this standard of review, we presume the trial court's findings of fact are correct unless the record preponderates against them; we review the trial court's conclusions of law de novo. *Id*.; *State v. Holmes*, 302 S.W.3d 831, 837 (Tenn. 2010). A trial court's wrongful denial of a defendant's right to counsel constitutes structural error, requiring automatic reversal. *Holmes*, 302 S.W.3d at 838; *see also State v. Rodriguez*, 254 S.W.3d 361, 371 (Tenn. 2008) (holding that structural constitutional errors, including the denial of the right to counsel or self-representation, "are not amenable to harmless error review" because they "compromise the integrity of the judicial process" and, thus, require automatic reversal).

As the Defendant correctly notes, the record contains no written waiver of the Defendant's right to counsel as required by Tennessee Rule of Criminal Procedure 44. The State, relying upon this court's opinion in *State v. Thomas*, No. W2023-01346-CCA-R3-CD, 2025 WL 2057942 (Tenn. Crim. App July 23, 2025), *perm. app. denied* (Tenn. Dec. 11, 2025), insists that this point should not be dispositive. Indeed, as we noted in that case, "the absence of a written waiver does not necessarily preclude a constitutionally valid waiver." *Id*. at *19 (internal quotation marks omitted) (first quoting *State v. Hatch*, No. W2000-01005-CCA-R3-CD, 2001 WL 1268442, at *6 (Tenn. Crim. App. Oct. 19, 2001), *perm. app. denied* (Tenn. Apr. 1, 2002); then citing *State v. McClain*, No. W2019-01217-CCA-R3-CD, 2021 WL 3828380, at *15 (Tenn. Crim. App. Aug. 26, 2021), *perm. app. denied* (Tenn. Dec. 8, 2021); and then citing *State v. Black*, No. 02C01-9803-CR-00081, 1999 WL 280810, at *4 (Tenn. Crim. App. May 7, 1999), *perm. app. denied* (Tenn. Sept. 25, 2000)).

However, this case is factually and legally distinguishable from *Thomas* and the cases upon which it relied. In *Thomas*, we reasoned that a defendant who consistently requested the removal and substitution of counsel waived his right to counsel both explicitly, by stating that he would prefer to proceed pro se if counsel were not removed, and implicitly, by repeatedly filing motions on his own behalf despite his legal representation. *Thomas*, 2025 WL 2057942, at *18-19. We also noted that Rule 44 "does not specify a particular form that the written waiver must follow." *Id*. at *19 (citing *State v. Battles*, No. W1998-00558-CCA-R3-CD, 1999 WL 1525475, at *8 n.5 (Tenn. Crim. App. Dec. 30, 1999), *no perm. app. filed*). Although our analysis was somewhat frustrated by the poor state of the appellate record in that case, we nevertheless determined that under those facts, the absence of the defendant's written waiver of his right to counsel did not warrant reversal. *Id*. at *19.

The cases upon which *Thomas* relied support this conclusion. In *Battles*, this court determined, in a footnote, that the defendant's statement in his written filings that he appeared *in propria persona* was "sufficient to satisfy the written waiver requirement because these motions were initiated by the defendant and the assertion was made

- 9 -

repeatedly." *Battles*, 1999 WL 1525475, at *8 n.5. In *McClain*, this court reasoned that the defendant implicitly waived his right to counsel and indicated his intention to proceed pro se by continuously submitting pro se filings despite his legal representation; this court also noted that the defendant "had previously demonstrated an unwillingness to sign written waivers and acknowledgments." *McClain*, 2021 WL 3828380, at *15. In other cases, when confronted with a complete absence of a written waiver, we have nevertheless concluded that the trial court's intensive inquiry into a defendant's decision to proceed pro se and its conclusion that such a decision was made knowingly and voluntarily were sufficient to protect a defendant's right to counsel and rendered any noncompliance with Rule 44's requirements harmless. *Hatch*, 2001 WL 1268442, at *6; *Black*, 1999 WL 280810, at *4. In each case, we concluded that the trial court had conducted the intensive inquiry necessary to determine and conclude that the defendant knowingly and voluntarily waived his right to counsel. *Thomas*, 2025 WL 2057942, at *18 (concluding that the trial court's inquiry "followed the guidelines" and that "[t]he record supports the trial court's conclusion that [the d]efendant had knowingly, voluntarily, and intelligently waived his right to counsel and elected to represent himself in this case"); *McClain*, 2021 WL 3828380, at *15 (affirming the trial court's finding that the defendant "testified, under oath, that he knowingly, intentionally, intelligently, and freely intends to represent himself at his jury trial and waives his right to appointed counsel and will further comply with the rules of evidence and criminal procedure" after the trial court "thoroughly questioned the defendant about his desire to represent himself and more than thoroughly cautioned the defendant about choosing self-representation"); *Hatch*, 2001 WL 1268442, at *6 ("The record in this case establishes that the trial court followed the requirements of *Herrod*, asking substantially all the questions originally outlined in *McDowell*. The colloquy was extensive."); *Battles*, 1999 WL 1525475, at *9 (finding that, although the defendant "thwarted" the trial court's attempts to inquire into whether he was knowingly and voluntarily waiving his right to counsel through his "obstinate assertion that he wanted to represent himself," "the trial court adequately investigated whether the defendant knowingly and intelligently waived his right to counsel"); *Black*, 1999 WL 280810, at *5 (finding that the trial court's implicit ruling that the defendant's waiver of his right to counsel was "adequately supported by the record" because the trial court's "questions substantially tracked those suggested by this [c]ourt in *Herrod*" and the trial court "repeatedly warned" the defendant of "the dangers of self-representation"). Accordingly, in order to find harmless error in the absence of a written waiver of the right to counsel, there must be some proof in the record of the trial court's conducting an intensive inquiry into a defendant's decision to waive his or her right to counsel in order to determine that such waiver is knowingly and voluntarily made.

Unlike *Thomas* and the cases upon which it relied, the record in this case indicates that the trial court failed to conduct the type of intensive inquiry necessary to determine whether the Defendant's waiver of his right to counsel was knowing and voluntary. This

court has previously recommended that trial courts consult the inquiries and questions provided in 1 *Bench Book for United States District Judges* in discharging the duty of determining whether a defendant has knowingly and intelligently waived the right to the assistance of counsel. *Herrod*, 754 S.W.2d at 630 (citing *United States v. McDowell*, 814 F.2d 245, 251-52 (6th Cir. 1987)). These questions include:

(a) Have you ever studied law?

(b) Have you ever represented yourself or any other defendant in a criminal action?

(c) You realize, do you not, that you are charged with these crimes: (Here state the crimes with which the defendant is charged.)

(d) You realize, do you not, that if you are found guilty of the crime charged in Count I the court must impose an assessment of at least $50 ($25 if a misdemeanor) and could sentence you to as much as --- years in prison and fine you as much as $---?

(Then ask him a similar question with respect to each other crime with which he may be charged in the indictment or information.)

(e) You realize, do you not, that if you are found guilty of more than one of those crimes this court can order that the sentences be served consecutively, that is, one after another?

(f) You realize, do you not, that if you represent yourself, you are on your own? I cannot tell you how you should try your case or even advise you as to how to try your case.

(g) Are you familiar with the [Tennessee] Rules of Evidence?

(h) You realize, do you not, that the [Tennessee] Rules of Evidence govern what evidence may or may not be introduced at trial and, in representing yourself, you must abide by those rules?

(i) Are you familiar with the [Tennessee] Rules of Criminal Procedure?

(j) You realize, do you not, that those rules govern the way in which a criminal action is tried in [this] court?

(k) You realize, do you not, that if you decide to take the witness stand, you must present your testimony by asking questions of yourself?  You cannot just take the stand and tell your story.  You must proceed question by question through your testimony.

(l) (Then say to the defendant something to this effect): I must advise you that in my opinion you would be far better defended by a trained lawyer than you can be by yourself.  I think it is unwise of you to try to represent yourself.  You are not familiar with the law.  You are not familiar with court procedure.  You are not familiar with the rules of evidence.  I would strongly urge you not to try to represent yourself.

(m) Now, in light of the penalty that you might suffer if you are found guilty and in light of all of the difficulties of representing yourself, is it still your desire to represent yourself and to give up your right to be represented by a lawyer?

(n) Is your decision entirely voluntary on your part?

(o) If the answers to the two preceding questions are in the affirmative, [and in your opinion the waiver of counsel is knowing and voluntary,] you should then say something to the following effect:

"I find that the defendant has knowingly and voluntarily waived his right to counsel.  I will therefore permit him to represent himself."

(p) You should consider the appointment of standby counsel to assist the defendant and to replace him if the court should determine during trial that the defendant can no longer be permitted to represent himself.

*McDowell*, 814 F.2d at 251-52 (quoting Guideline For District Judges from 1 *Bench Book for United States District Judges* 1.02-2 to -5 (3d ed. 1986)).  Generally, "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." *Hester*, 324 S.W.3d at 31 (quoting *Godinez v. Moran*, 509 U.S. 389, 399 (1993)); *see also McCary*, 119 S.W.3d at 256 ("A defendant need not have legal training or experience in order to completely and intelligently elect self-representation.").

The trial court's colloquy in this case fell short of the type of intensive inquiry required to ensure that the Defendant's decision to waive his right to counsel was knowing and voluntary.  To be sure, the trial court appropriately inquired into the Defendant's

background by asking about his age, highest education level, employment history, whether he was an attorney or had a law degree, whether he had previously taken any special education courses, and whether he had ever been treated for mental illness. The trial court also appropriately ensured the Defendant understood the nature of his charge and its associated penalties if the Defendant was convicted.

However, the trial court neglected to ask the Defendant whether he had previously represented himself in other criminal proceedings. It also did not ask the Defendant if he was familiar with the Tennessee Rules of Evidence or the Tennessee Rules of Criminal Procedure, nor did it ensure that the Defendant understood their applicability in his case. The trial court did not discuss the ramifications of the Defendant's testifying on his own behalf during trial or ask whether he understood that he would need to ask himself questions, as he would with any other witness, if he chose to testify. Importantly, the trial court also did not ask the Defendant whether he knowingly and voluntarily waived his right to counsel. In fact, the trial court did not inform the Defendant of his Sixth Amendment right to counsel at any point before, during, or after its inquiry.

The trial court instead devoted approximately one-half of its discussion during the inquiry to questioning the Defendant about his legal defense and, specifically, about the individual who advised the Defendant regarding his defense. Although the trial court opined on the merits of that defense and counseled the Defendant to consider discussing it and alternative methods of resolving his case with elbow counsel and the State, it fell short of ensuring the Defendant knowingly and voluntarily assumed the obligation of presenting that defense on his own behalf. And while the trial court's concern that the Defendant potentially received unsound advice from an individual engaged in the unauthorized practice of law is understandable, the trial court's duty during this inquiry was not to probe into the background of the Defendant's defense but rather to ensure the Defendant understood the ramifications of his waiving his constitutional right to counsel.

The trial court's inquiry fell short of the requirements to ensure the Defendant's waiver was knowing and voluntary; therefore, the judgment requires reversal. *Von Moltke*, 332 U.S. at 724; *see also State v. Prince*, No. M2020-01302-CCA-R3-CD, 2021 WL 5710541, at *7 (Tenn. Crim. App. Dec. 2, 2021), *no perm. app. filed*. Further, Rule 44 requires that a defendant waive his or her right to counsel in writing and that the written waiver be included in the record. Tenn. R. Crim. P. 44(b)(2)-(3). While noncompliance with those requirements may ultimately amount to harmless error when a trial court conducts a sufficient inquiry into a defendant's decision to waive his or her right to counsel, it is still, nevertheless, error. In cases where, as here, the trial court's inquiry is constitutionally deficient, that error exacerbates the constitutional injury. Accordingly, the Defendant's conviction is reversed, and this case is remanded for a new trial. On remand, if the Defendant indicates his desire to waive his right to counsel and proceed pro se, the

trial court should conduct the necessary inquiry suggested by this court in *Herrod* and in 1 *Bench Book for United States District Judges*, ensure that the Defendant's decision is made knowingly and voluntarily, and obtain any waiver of such right in writing.

## B. SENTENCING

Having reversed the Defendant's conviction and remanded for a new trial, determination of the Defendant's sentencing claim is unnecessary. Nevertheless, in the interest of judicial economy and in the event of further appellate review, we will briefly consider the Defendant's arguments.

The Defendant argues that the trial court erred in imposing his sentence of 180 days' incarceration because it failed to consider the purposes and principles of sentencing or to make the requisite findings to support its determination that confinement was particularly suited to provide an effective deterrence to others likely to commit similar offenses pursuant to *Hooper*, 29 S.W.3d at 13. The State responds that the trial court properly considered the purposes and principles of sentencing; that the trial court was not required to make the specific *Hooper* considerations before imposing a sentence of confinement because it also based its sentencing decision on the Defendant's criminal history; and that the trial court did not abuse its discretion in imposing a within-range sentence.

The Defendant was convicted of driving on a suspended license, a Class B misdemeanor with a maximum sentence of six months' (180 days') incarceration. Tenn. Code Ann. § 55-50-504(a)(1); 40-35-111(e)(2). We review a trial court's sentencing determinations for abuse of discretion. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). Additionally, where the trial court imposes a within-range sentence, "and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles" of the Sentencing Act, we afford its sentencing determinations a presumption of reasonableness. *Id*. A trial court abuses its discretion in the context of sentencing determinations by applying an incorrect standard of law or reaching a decision contrary to logic or reasoning that causes prejudice to the complaining party. *State v. Bonds*, 502 S.W.3d 118, 166 (Tenn. Crim. App. 2016) (citing *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997)). We apply this same standard of review to both felony and misdemeanor sentences. *See State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014) ("*Bise* and its progeny establish that the abuse of discretion standard of appellate review accompanied by a presumption of reasonableness applies to all sentencing decisions."); *State v. Hampton*, No. W2018-00623-CCA-R3-CD, 2019 WL 1167807, at *12 (Tenn. Crim. App. Mar. 12, 2019) (collecting cases applying the *Bise* standard of review to misdemeanor sentencing issues), *no perm. app. filed*.

A trial court generally has greater latitude and flexibility during misdemeanor sentencing than in felony sentencing. *State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). For example, a trial court is not required to hold a separate sentencing hearing for misdemeanor convictions, *see* Tenn. Code Ann. § 40-35-302(a), and misdemeanor convictions generally carry no presumptive minimum sentences, *see State v. Cooper*, 336 S.W.3d 522, 524 (Tenn. 2011). In imposing a misdemeanor sentence, the trial court must also "fix a percentage of the sentence that the defendant shall serve" by considering the purposes and principles of sentencing and the enhancement and mitigating factors to ensure the percentage of confinement is not arbitrarily imposed. Tenn. Code Ann. § 40-35-302(d). Nevertheless, the purposes and principles of sentencing generally considered in affixing felony sentences also apply to misdemeanor sentences. *See id*. §§ 40-35-102, -103; *State v. Troutman*, 979 S.W.2d 271, 273 (Tenn. 1998). Included among these purposes and principles is the balancing consideration that "the sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed[,]" while also acting as an effective deterrent to future violations of the law. *See* Tenn. Code Ann. §§ 40-35-102(3)(A), -103(4). Although the trial court is not required to make particularly lengthy or detailed findings on the record in its consideration of these factors, it must nevertheless "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for imposing the sentence." *Bise*, 380 S.W.3d at 705-06 (citing *Rita v. United States*, 551 U.S. 338, 356-57 (2007)). Furthermore, both felony and misdemeanor sentences involving confinement may be imposed where:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1); *State v. Ruiz*, 716 S.W.3d 439, 458 (Tenn. Crim. App. 2024).

The Defendant asserts that the trial court based his sentence of 180 days' incarceration solely upon the need to provide an effective deterrence to others likely to commit similar offenses and, accordingly, that its decision should be subjected to a heightened standard of review. When a trial court sentences a defendant to confinement based solely upon the need for deterrence, the record must contain evidence "which would enable a reasonable person to conclude that (1) deterrence is needed in the community,

jurisdiction, or state, and (2) the defendant's incarceration may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes." *Hooper*, 29 S.W.3d at 13.

In determining whether a defendant's incarceration is "particularly suited" towards ameliorating the need for deterrence, the trial court should consider

> (1) Whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or in the state as a whole;
>
> (2) Whether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior;
>
> (3) Whether the defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case;
>
> (4) Whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective; and
>
> (5) Whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions.

*Id*. at 10-12. However, when a trial court bases a defendant's incarcerative sentence on multiple considerations provided for in Code section 40-35-103(1), its decision is not subjected to the same heightened standard of review. *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014).

The State responds that *Hooper*'s heightened standard of review is inapplicable here because the trial court based its sentencing determination on both the need for deterrence and the Defendant's lengthy criminal history. Regardless of the appropriate standard of review, the trial court abused its discretion in concluding that confinement was warranted on deterrence grounds. The trial court specifically stated that "what's important is that the disposition in this case sends a clear message to everyone else." Although the trial court discussed the Defendant's having previously been through the court system on similar charges and his continued failure to remedy his conduct, its discussion of deterrence came in the context of a lengthy admonition regarding the merits of the Defendant's legal defense. As the State notes in its brief, the trial court emphasized that there had been "several" cases of defendants advancing legal theories similar to the Defendant's defense.

The trial court also admonished the Defendant that he had "wasted everybody's time here" with a "nonsensical defense."

Inasmuch as the trial court based the Defendant's sentence on the need to deter similarly situated defendants from advancing the same "nonsensical defense," it erred. Axiomatically, criminal defendants have the right to counsel, and they have the right to present a defense. *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *State v. Brown*, 29 S.W.3d 427, 432 (Tenn. 2000). While this right is not absolute and must, in certain appropriate circumstances, "yield to other legitimate interests in the criminal trial process," *Brown*, 29 S.W.3d at 432, the purpose of deterrence is on the need to preclude similar offenses from occurring in the future, not as a basis for discouraging a particular type of legal defense theory. *See State v. Willoughby*, No. E2023-01499-CCA-R3-CD, 2025 WL 1202079, at *10 (Tenn. Crim. App. Apr. 25, 2025) ("[W]hen a court considers the question of incarceration, its focus is on the need for incapacitative measures, considering amenability to rehabilitation as well as furthering notions of retributive justice and deterrence.") (citing Tenn. Code Ann. § 40-35-103(1)(A)-(C), (5) (2019)), *no perm. app. filed*.

The trial court also based its sentencing determination, in part, on the need to deter the Defendant from committing similar offenses, given his prior encounters with law enforcement and the court system. Beyond the arguments of counsel and the Defendant's concession that he had previously been charged with similar offenses that were dismissed, however, nothing in the record supports the trial court's conclusion that the Defendant, in fact, had a lengthy criminal history of similar past behavior. The record does not contain a presentence report, nor does it indicate that one was prepared. The only evidence of the Defendant's prior criminal history in the record is a copy of his official driver's record from the State of Tennessee's Department of Safety, which was made an exhibit to the Defendant's trial. The sole information contained in this report indicates that the Defendant was cited for driving on a suspended license and that he failed to appear in court on April 13, 2023. This falls short of proving the fact of the Defendant's six prior dismissed charges for similar criminal conduct. And although the Defendant conceded that he had been previously similarly charged, and despite the trial court's ability to accept such concessions during sentencing, *see State v. Garrens*, No. W2024-00258-CCA-R3-CD, 2025 WL 1307696, at *7 (Tenn. Crim. App. May 6, 2025) ("[W]here the parties agree to some aspects of sentencing, the trial court is not required to hold a hearing on those issues."), *no perm. app. filed*, we nevertheless note that while "criminal behavior other than convictions may be properly considered during sentencing, the mere existence of a charge is not sufficient to establish that the conduct occurred, and consideration of charges which were either dismissed, diverted, or in which a forfeiture was entered, was error," *State v. Franklin*, No. M2018-01958-CCA-R3-CD, 2020 WL 4280692, at *24 (Tenn. Crim. App. July 27, 2020) (internal quotation marks omitted) (quoting *State v. Hensley*, No. W2007-

00878-CCA-R3-CD, 2008 WL 2483886, at *4 (Tenn. Crim. App. June 18, 2008), *no perm. app. filed*), *perm. app. denied* (Tenn. Nov. 12, 2020). The State bears the burden of proving, by a preponderance of the evidence, facts relevant to a defendant's sentencing during a sentencing hearing. *State v. Carico*, 968 S.W.2d 280, 287 (Tenn. 1998). It is apparent that the State was familiar with the Defendant, who, by his own admission, had previous experience with the court system. But when it came time to make its record and prove the fact of that previous experience during sentencing, the State failed to carry its burden of proof. The record preponderates against the trial court's sentencing findings, and the court abused its discretion in imposing a 180-day sentence of incarceration in this case based upon the record before us.

### III.   CONCLUSION

Following our review of the record and based upon the foregoing analysis, we reverse the judgment of the trial court. The Defendant's conviction is reversed, and the case is remanded for a new trial.

s/ *Steven W. Sword*
                 
STEVEN W. SWORD, JUDGE